TP:khs 5/3/2010 2:53:02 PM 061717

In the United States District Court
Northern District of Illinois, Eastern Division

Jacqueline Fegan,

               Plaintiff,

               v.                            No.:  06 cv 6767

Robert Reid #17285, *et. al,*              Judge Lefkow

               Defendants.

<u>Plaintiff's Motion for Attorney's Fees and Non-Taxable Costs</u>

    Jacqueline Fegan moves as follows:

<u>Introduction</u>

    This has been a hard fought and highly contentious lawsuit now entering its fourth year of litigation.  Jackie Fegan was permanently injured and her city career ruined when Reid and the others arrested her without probable cause because she was unable to fix a parking ticket on Reid's personal vehicle.  Reid used excessive force in handcuffing her and with the others' help threw her into a squadrol further injuring her.  The others conspired with Reid and concocted a fabricated story about the circumstances of the arrest and the subsequent events.  When the four defendants arrived with Fegan at the police station, they quickly learned they had a serious problem on their hands.  The watch commander was not buying any of their story.  Soon the 'jaywalking' arrest they made up grew into an even larger lie - assault and battery on a police officer – a felony, and resisting arrest – another felony.  The defendants conspired to violate Fegan's civil rights to try and avoid discipline and to assist and protect defendant Reid, a now

former police officer with an ungovernable temperament and a well-documented history of violence towards civilians.

The defense by these officers pulled out all of the stops.  Not only did they deny the events Fegan alleged, they branded her as a criminal, a liar and malingerer.  Reid burned up the phone lines trying to get her charged with felonies all because she could not fix a parking ticket for him.  They hired 'experts' in an effort to destroy her case.  They claimed she was not injured and told the jury she invented her damages to support a lawsuit.  Fegan alone stood up to four sworn police officers, and the City of Chicago who was backing them to the hilt, to show the jury that it was the defense that was the construct of lies, not her claims.  The jury saw through the defense, agreed with Fegan and awarded her compensatory damages for her injuries.

1.      On October 23, 2009 the court entered judgment in favor of plaintiff and against defendants on her federal and state causes of action based on the juries verdicts.  42 USC §1988 provides for a reasonable attorney's fee for parties prevailing in federal civil rights claims. Plaintiff is a prevailing party and is entitled to fees and costs.  Plaintiff's fee petition is due on before May 3, 2010.

2.      Pursuant to Local Rule 54.3(d) the parties conferred in attempt to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee petition.  They were unable to agree.

3.      The plaintiff claims:

A.      That the plaintiff's attorney's have expended a total of 1,937.42 hours as of March 31, 2010 on the preparation and trial of this case as itemized in exhibit '1' attached hereto, made a part hereof and incorporated herein by reference and summarized in the Rule 54.3(d) joint statement.

B.      That the plaintiff's lawyers' paralegal expended a total of 25.8 hours as of October 31, 2008 on the preparation of this case as itemized in exhibit '1' attached hereto, made a part hereof and incorporated herein by reference and summarized in the Rule 54.3(d) joint statement

C.      That the plaintiff's attorneys incurred a total of $61,146.75 of non-taxable costs and expenses on this case as itemized, with copies of the receipts, invoices and cancelled checks in exhibit '2' attached hereto, made a part hereof and incorporated herein by reference. Plaintiff's taxable costs amounted to $18,831.96 and which were taxed by the clerk.  The court's ruling on the defendants' untimely objections and plaintiff's response is pending.

D.      That the plaintiff's attorneys claim Mr. Tobin's hour rate to be $450.00, Mr. Petkus' to be $345.00 per hour, Mr. Marino and Ms Tobin to be $245.00 per hour and Mr. Schook to be $195.00 per hour.

E.      That the plaintiff's attorneys clam their paralegal rate is $95.00 per hour.

4.      The plaintiff's attorneys attach exemplar billing statements, attached hereto as exhibit '3,' from general litigation files being handled or which were handled from 2006, the year they were engaged by Ms Fegan through the end of March, 2010 establishing the following:

A.      Mr. Tobin's time has been charged to clients at the rate of $450.00 to $495.00 per hour and that the plaintiff's law firm has been paid those hourly rates by its clients for his time. The plaintiff seeks the low end of Mr. Tobin's standard hourly rates;

B.      Mr. Petkus time has been charged to clients between the rates of $345.00 and $450.00 per hour and that the plaintiff's law firm has been paid those hourly rates by its clients for his time.  The plaintiff seeks the low end of his standard hourly rates;

C.      Ms. Tobin's time has been charged to clients between the rates of $245.00 and $275.00 per hour and that the plaintiff's law firm has been paid those hourly rates by its clients for her time.  The plaintiff seeks the low end of her standard hourly rates;

D.      Mr. Marino's time has been charged to clients at the rate of $245.00 per hour and that the plaintiff's law firm has been paid that hourly rate by its clients;

E.      Mr. Schook's time has been charged to clients between the rates of $195.00 and $245.00 per hour since becoming an attorney on November 1, 2007.  The plaintiff seeks the low end of his standard hourly rate.  Mr. Schook's time as a paralegal before becoming an attorney was charged at the rate of $95.00 per hour and that the plaintiff's law firm has been paid that hourly rate by its clients.

The foregoing general litigation files billing exemplars include products liability defense, a criminal case, consumer fraud and deceptive trade practices, appellate practice, breach of contract, a shareholder derivative action, a RICO case, administrative proceeding on a license and is a representative sample of the gamut of plaintiff's attorneys' general litigation practice on behalf of private clients.

5.      In further support of their hourly rates and time the plaintiff attaches the affidavits of Mr. Tobin, Mr. Petkus and Mr. Schook as exhibits 4, 5 and 6, respectively.

6.      Mr. Petkus and Mr. Tobin have been in practice thirty years.  In that time they have gained reputations for trial and lawyering skills and cost-saving innovation in the courtroom and preparation of cases for trial.

Tobin Petkus & Muñoz, LLC is listed as one of the preeminent law firms in the United States.  Mr. Tobin has been listed for many years as a preeminent attorney in the United States. He has received the highest rating for legal ability and ethics by *Martindale Hubbell,* the oldest

attorney rating system. He has maintained that rating for more than two decades. He has been voted by his peers as one of the top lawyers in *Super Lawyers*. He has been selected by his peers for the *Leading Lawyers* publication. That publication has repeatedly listed him as an expert in the field of personal injury and civil rights. He is similarly recognized in criminal defense and commercial litigation. For decades, he has been listed in the publication, *The Best Lawyers in America*. There is a National Trial Attorney's Association that is restricted to invitation of the top 100 trial attorneys in each state of which he is an invited member. He is a faculty member and an instructor for the National Institute for Trial Advocacy, a position he has held for more than 20 years.

Mr. Petkus was well known for innovating use of technology to assist with the preparation and trial of cases in a more cost effective manner. He was chairman of the computer technology committee of the Chicago Bar Assoc. and worked on numerous innovations that are in common day usage in courtrooms today. Mr. Petkus worked on bringing electronic filing to the court system – in use now every day. Mr. Petkus was the architect of the system that led to the first electronic trial in this courthouse in a case tried before Judge Plunkett called IB Diffusion, a sexual harassment and employment discrimination case. The use of computer technology shortened the trial and reduced the costs of putting on the proofs. Magistrate Judge Roseman awarded IB Diffusion almost a million dollars in legal fees as the prevailing party (later reversed by the district judge).

Ms. Tobin has had years of experience trying cases as a defense attorney. She too is an AV rated attorney by *Martindale Hubbell*.

Mr. Marino is a now retired criminal defense and litigation attorney who had more than thirty years of trial experience including hundreds of verdicts and motions when he left the Public Defender's office and joined Tobin Petkus and Muñoz, LLC.

Mr. Schook, though only practicing law for two and one-half years has shown he is capable of managing complex cases involving voluminous evidence. The firm's clients agree and are pleased to have him working on their matters.

7.     The defendants had nine attorneys working on the case. Three city attorneys Ernest Mincy, Josh Engquist and Diane Cohen did not keep their time recorded and so the number of hours they contributed is not known precisely. However Ms. Cohen was actively involved from the beginning of the case until Mr. Leinenweber and Mr. Daffada came aboard in the Spring of 2008 – two years into the litigation. Mr. Engquist too was involved for almost the same length of time.

8.     The defense attorneys from Leinenweber and Daffada would not provide the plaintiff with their complete time records. Knowing their hourly rates and the total fees they billed the City of Chicago, the plaintiff is aware that Mr. Leinenweber and Mr. Daffada, since spring of 2008, billed $244,400.00 in fees. At their stated rate of $250.00 per hour they spent 977.6 hours on the defense of the case. In less than two years they spent more than half the time plaintiff's entire firm spent on the whole case in four.

9.     Ms Sullivan too would not provide the plaintiff with her firm's complete time records. There were at least five attorneys working on the case, though only she, Allison Crane and McRay Judge played major roles. Their law firm has billed the City $364,978.95. Averaging the hourly rates of Ms Sullivan, Mr. Judge and Ms Crane yields a simple hourly rate of $180.00 per hour until the end of 2009. The law firm of Swanson Martin and Bell has spent

approximately 2,027.66 billable hours on the defense.  In a little over two years Ms Sullivan and her colleagues spent more time on the case than the plaintiff's lawyers and entire law firm did in four years.

10.     As of Spring of 2008 when the city's corporation counsel's attorneys passed the baton to Leinenweber, plaintiff's counsel had already well in excess of a thousand hours of work on the case.  Thus, plaintiff estimates that the corporation counsel's office spent over a thousand hours on the file as well.

11.     Simple arithmetic shows that the defense has spent twice as many hours as the plaintiff on the case.  For the defense to quibble over some of the time they are fighting on is trivial and completely out of context when viewing the case as a whole.  Little wonder that the defendants will not turn over their complete time records since they show over four thousand hours- double what the plaintiff's lawyers spent – and at 'government' rates.

12.     As to the claims that more than one plaintiff's lawyer appeared at some events, and three lawyers attended the trial, that cannot be sustained by the cherry picking of records the defendants have chosen to disclose.  There were four lawyers for the defendants in the court room every day.  Ms. Allison Crane was working in the office on the case unless she too was the fifth defense lawyer in the courtroom.  The defendants would not supply complete time records of all of the attorneys covering the trial period.  They only supplied actual trial time in the court room and this is misleading.

13.     Ms Crane was in court for 3.5 hours on October 8, 2009 to assist her in the revision of jury instructions.  After she got back to the office she presumably started on that task but none of her time records – except for trial attendance - have been disclosed.  Whether Mr. Schook sat in the court room or in his office – he was working on the case and his time is just as

reasonable and just as billable as Ms Cranes' (and whatever unknown others such as paralegals may have been working too). It is disingenuous to object to three lawyers working the case at the same time when the defendants had five lawyers working the case (at least) at the same time. Plaintiff believes that if the defendants were compelled to turn over their billing records it would be a real eye opener of how much lawyering was going on each side during trial and at other critical times.

14.     There also were instances where there were three defense attorneys present when only one plaintiff's lawyer was in attendance. None of those time records were turned over. Attached is a chart, exhibit 7, showing certain court appearances as well as deposition appearances and who attended for each side. Those entries in bold show where one lawyer for plaintiff was present and two or even three attorneys for the defendants participated. Defendants' cherry picking of those dates where only one or two defense counsel were there cannot be squared with those few instances where the ratio was the other way. Defense counsel chose on occasion to have five lawyers present (during trial) and it is not unreasonable for the plaintiff to have three lawyers present on occasion.

15.     Defendants' position is also disingenuous to the extent that they fail to reveal how much time was spent on briefing their colleagues after court appearances or witnesses deposition testimony was taken. These conferences, memos and briefings were avoided when all three attorneys were there for plaintiff, especially at trial. Defense counsel no doubt billed extra for the other lawyers to remain up to speed or to get up to speed by keeping them abreast of developments in the case. Mr. Judge first appeared well after many depositions were done and no doubt had to spend a considerable amount of time catching up where the three lawyers for plaintiff incurred no such time. No billing records of the 'homework' time Mr. Judge billed for

were supplied by defendants.  For the defense to bill for this time but object to a second lawyer being present for plaintiff is not reasonable.

16.     Defendants have failed to supply any evidence that the plaintiff's claimed hourly rates are inappropriate or excessive or not their standard rates or unreasonable.  They have failed to supply any evidence to support the hourly rate they suggest is appropriate.   The failure and refusal of the defendants to act in good faith before the due date of this filing should preclude them from arguing the validity of the plaintiff's claims.  The court granted several extensions to the time to file this motion to give defendants the opportunity to put forward their evidence and their specific claims and they did not avail themselves of those extensions.

17.     Defendants have failed to supply any evidence that the plaintiff's claimed non-taxable costs and expenses are not recoverable or are unreasonable.  Defendants have not itemized which expenses should not be reimbursed.  It was not until noon of today, when they submitted their portion of the joint statement to plaintiff to include in this filing, that they first advanced any specificity as to certain subpoenas to witnesses or a few other minor matters they mention in their portion of the filing.  The failure and refusal of the defendants to act in good faith before the due date of this filing should preclude them from arguing the validity of the plaintiff's claims.

Wherefore the plaintiff prays that the court award the plaintiff $697,140.99 for attorney's fees and non-taxable costs and for such other and further relief the court determines is warranted.

May 3, 2010                          Respectfully Submitted,

Jacqueline Fegan, plaintiff,

By: s/ Karl H. Schook
    One of her attorneys

<u>Certificate of Service</u>

I hereby certify that I served the foregoing using the court's CM/ECF system which will send notification of such filing to the counsel of record.

May 3, 2010                                          <u>s/ Karl H. Schook</u>
                                                    Karl H. Schook

Craig D. Tobin
Tomas Petkus
Karl H. Schook
Tobin Petkus & Muñoz, L.L.C.
Attorneys for Plaintiff
Three First National Plaza, #1950
Chicago, IL 60602-4298
Office (312) 641-1321
Facsimile (312) 641-5220
Email   ctobin@barristers.com
        tomaspetkus@barristers.com
        khschook@barristers.com

\\Ma01\data - client\Tobin, Craig\Fegan v. City\Post-Trial\Petition, fees and costs\motion, fees and costs.doc